FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

JONATHAN DANIELS

CASE NO. 8:21-cr-287-VMC-CPT
18 U.S.C. § 1349
18 U.S.C. § 1028A

**INDICTMENT**

SEALED

The Grand Jury charges:

**COUNT ONE**
**(Conspiracy)**

A.  Introduction

At all times material to this Indictment:

1. Defendant JONATHAN DANIELS was a resident of the Middle District of Florida.

2. Ian Christopher McGeehan ("McGeehan") was a resident of the Middle District of Florida.

3. Florida Statute 713.78 provided, in pertinent part, a procedure for towing and storage operators to claim liens for their towing and storage fees and sell unclaimed vehicles by public sale as follows:

   a. A towing and storage operator was required to "have a lien on the vehicle for a reasonable towing.... and storage fee."

b.  The towing operator was required to provide a notice of lien to the registered owner(s) and any lienholder(s) of the vehicle, including financial institutions, as determined through a check of public records, in order to sell an unclaimed vehicle through a public sale.

c.  The notice of lien was required to include, among other information, the last 8 digits of the vehicle identification number ("VIN"), the name, physical address, and telephone number of the towing and storage operator, the address where the vehicle was located, notice that the towing and storage operator had claimed a lien, and an itemized list of the accrued charges for towing and storage.

d.  The notice of lien and time and place of proposed public sale was required to be sent to the owner(s) and lienholder(s) by certified mail.

e.  A notice of the lien and the proposed time and place of the public sale was required to be published "at least 10 days before the date of sale, in a newspaper of general circulation in the county in which the sale [was] to be held."

f.  After serving the notice of lien, if the accrued charges for towing and storage remained unpaid, the towing and storage operator was permitted to sell the vehicle by public sale and keep the proceeds up to the amount of the towing and storage costs.

### B. The Conspiracy

4. Beginning on an unknown date, but no later than in or around April 2016, through and including in or around November 2017, in the Middle District of Florida and elsewhere, the defendant,

**JONATHAN DANIELS,**

did knowingly and voluntarily combine, conspire, confederate, and agree with Ian Christopher McGeehan and others, both known and unknown to the Grand Jury, to commit wire fraud, in violation of 18 U.S.C. § 1343.

### C. Manner and Means

5. The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

   a. It was a part of the conspiracy that the conspirators would and did clear the titles of vehicles of liens from financial institutions and other lienholders, by claiming false and fraudulent towing and storage liens on the vehicles, by falsely claiming the vehicles were sold at public sale, by preparing and submitting false and fraudulent documents to Florida tax collector's offices, and by either keeping the vehicles for themselves or selling the vehicles and keeping the proceeds.

   b. It was further part of the conspiracy that the conspirators would and did obtain vehicles by running online advertisements seeking vehicle owners, whose vehicles had been purchased with loans and who wished to sell their vehicles and eliminate their loan payments, utilizing interstate wire communications.

c.      It was further part of the conspiracy that the conspirators would and did also obtain vehicles by purchasing the vehicles through use of false and fraudulently obtained identities and obtaining loans from banks and other financial institutions to finance the purchase of these vehicles.

d.      It was further part of the conspiracy that conspirator DANIELS would and did provide the VIN numbers from the vehicles obtained as part of the conspiracy to conspirator McGeehan in person and via interstate wire communications, namely text messages.

e.      It was further part of the conspiracy that conspirator McGeehan would and did query the VIN numbers in an online subscription database in order to search public records and obtain the names and addresses of the vehicles' registered owners and lienholders.

f.      It was further part of the conspiracy that the conspirators would and did create false and fraudulent paperwork for the vehicles, as purported proof of a towing and storage lien and compliance with Florida law, including for each vehicle:

      i.  a printout of McGeehan's search of the online subscription database for the vehicle, showing the public records query;

      ii. a false and fraudulent tow bill with a purported towing operator name and/or logo, containing the VIN, year, make, model, and other information for the vehicle, an amount claimed due for towing and storage, which tow bill stated that the vehicle was towed;

4

iii. a "Towing and Storage, Notice of Claim of Lien and Proposed Sale of Vehicle, Mobile Home, or Vessel" for each owner and lienholder, containing the VIN, year, and make of the vehicle, which falsely and fraudulently documented the purported location of the vehicle, the towing operator's claim of lien, and date of proposed public sale of the vehicle, when in fact no notice was given to the owner(s) and lienholder(s);

iv. false and fraudulent certified mail receipts, containing the names and addresses of the owner(s) and lienholder(s) and fake tracking numbers, which purportedly show proof of mailing by certified mail of the "Notice of Claim of Lien and Proposed Sale of Vehicle" to the owner(s) and lienholder(s), when in fact the notices were never mailed and McGeehan falsely and fraudulently altered the certified mail receipts to place the names and addresses of the owner(s) and lienholder(s) on them and to show legitimate endorsement by the United States Postal Service when in fact no such endorsement had occurred;

v. a false and fraudulent "Affidavit of Publication," containing a purported advertisement in a newspaper of general circulation in the county in which the purported public sale was to be held, noticing the lien and public sale of the vehicle at a specified location, date and time, the signature of the purported newspaper publisher, and the signature and stamp of a notary public; and

vi. a false and fraudulent bill of sale, containing the name and address of the purported towing operator, the purported name and address of a co-conspirator who falsely claimed to have purchased the vehicle at the public sale, the VIN, make, and model of the vehicle, and the vehicle's purported price, which falsely stated that a co-conspirator legitimately purchased the vehicle at a public sale.

5

6. It was further part of the conspiracy that conspirator McGeehan would and did deliver the fraudulent paperwork to conspirator DANIELS or another conspirator.

7. It was further part of the conspiracy that conspirator DANIELS recruited others to present fraudulent paperwork to Florida tax collector's offices.

8. It was further part of the conspiracy that conspirators, including DANIELS, would and did complete paperwork at the Florida tax collector's offices, claiming that they or other conspirators, who had provided "Power of Attorney" forms, had purchased the vehicles at public sales for prices lower than the purportedly owed towing and storage fees and significantly lower than the market value of the vehicle.

9. It was further part of the conspiracy that conspirators, including DANIELS, would and did submit the fraudulent paperwork detailed above and payment for the Florida title fee.

10. It was further part of the conspiracy that the conspirators, including DANIELS, would and did obtain from the Florida tax collector's offices clear titles to the vehicles obtained as part of the fraud scheme.

11. It was further part of the conspiracy that, through the fraud scheme, the conspirators would and did steal the financial institutions' and other lienholder(s) collateral for their loans, that being their interest in the vehicles.

12. It was further part of the conspiracy that the conspirators, including DANIELS, would and did retain the vehicles or sell the vehicles to innocent owners for significantly more than the purported public sale price.

13. It was further part of the conspiracy that the conspirators would and did share in the fraud proceeds.

14. It was further part of the conspiracy that the conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the object of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNT TWO
### (Aggravated Identity Theft)

1. Section A and C of Count One of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. In or around August 2017, in the Middle District of Florida, the defendant,

**JONATHAN DANIELS,**

aiding and abetting others, did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, specifically a name and signature for A.F., during and in relation to the felony offense of wire fraud, in violation of 18 U.S.C. § 1343, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. §§ 1028A and 2.

## **FORFEITURE**

1. The allegations contained in Count One of this Indictment are incorporated by reference for the purpose of alleging forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1349, the defendant,

JONATHAN DANIELS,

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), any property, real or personal, involved in such offense, or any property traceable to such property.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds obtained from the offense.

4. If any of the forfeitable assets described above, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence.

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

██████████████████
Foreperson

KARIN HOPPMANN
Acting United States Attorney

By: _____
Jennifer L. Peresie
Assistant United States Attorney

By: _____
for Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section

FORM OBD-34
August 21

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Tampa Division

THE UNITED STATES OF AMERICA

vs.

JONATHAN DANIELS

## INDICTMENT

Violations:  18 U.S.C. § 1349
18 U.S.C. § 1028A

A true bill,

███████████████████

Filed in open court this 25th day

of August, 2021.

_____
Clerk

Bail $_____

GPO 863 525