UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    Case No.: 8:21-cr-287-VMC-CPT

JONATHAN DANIELS
_____/

**ORDER**

This matter comes before the Court pursuant to Defendant Jonathan Daniels' Motion for New Trial on Count Six (Doc. # 167), filed on June 21, 2023. The United States of America responded on June 30, 2023. (Doc. # 171). For the reasons that follow, the Motion is denied.

I.  **Background**

In February 2023, Daniels went to trial on the six charges of the Superseding Indictment, all related to a fraud scheme with other co-conspirators to clear the titles of vehicles of liens from financial institutions and other lienholders (1) by claiming false and fraudulent towing and storage liens on the vehicles, (2) by falsely claiming the vehicles were sold at public sale, or (3) by preparing and submitting false and fraudulent documents to Florida tax collector offices. (Doc. # 59 at 3; Doc. # 130). Daniels and his co-conspirators allegedly kept the vehicles for

1

themselves or sold them and kept the proceeds. (Doc. # 59 at 3). After a four-day trial, the jury found Daniels guilty of Count One for conspiracy to commit wire fraud, Counts Three and Four for wire fraud, and Count Six for aggravated identity theft under 18 U.S.C. §§ 1028A and 2. (Doc. # 143). The jury instruction for aggravated identity theft, which Daniels and the government both proposed and to which Daniels did not object, read in relevant part:

> The Government also must prove that the means of identification was possessed "during and in relation to" the crime alleged in the Superseding Indictment. The phrase "during and in relation to" means that there must be a firm connection between the defendant, the means of identification, and the crime alleged in the Superseding Indictment. The means of identification must have helped with some important function or purpose of the crime, and not simply have been there accidentally or coincidentally. The means of identification at least must facilitate, or have the potential of facilitating, the crime alleged in the Superseding Indictment.

(Doc. # 141 at 15).

Now, Daniels moves for a new trial only as to Count Six for aggravated identity theft. (Doc. # 167). The United States has responded (Doc. # 171), and the Motion is now ripe for review.

II.  **Legal Standard**

Under Federal Rule of Criminal Procedure 33(a), the court is empowered to grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Outside the context of claimed newly discovered evidence, this standard is broad, and the decision to grant a new trial is within the sound discretion of the trial court. United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).

### III. Analysis

#### A. The Motion is Deemed Timely

First, the issue of timeliness. Rule 33(b)(2) provides that "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). But Rule 45(b)(1)(B) states:

> When an act must or may be done within a specified period, the court on its own may extend the time, or for good cause may do so on a party's motion made:
>
> . . .
>
> (B) after the time expires if the party failed to act because of excusable neglect.

Fed. R. Crim. P. 45(b)(1)(B).

Daniels filed his Motion on June 21, 2023 – well over fourteen days after the jury reached its verdict on February

10, 2023. (Doc. # 143). Thus, on its face, the Motion is untimely.

But Daniels argues he has established excusable neglect based on the recent Supreme Court decision, Dubin v. United States, 143 S. Ct. 1557 (2023), which was issued on June 8, 2023, and based on new defense counsel's appearance on June 16, 2023. (Doc. # 167 at 1-2). Notably, this Motion was filed within fourteen days of Dubin's issuance.

"The determination of excusable neglect 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" United States v. Ryans, 709 F. App'x 611, 616 (11th Cir. 2017) (quoting Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)). "The relevant circumstances include (1) the danger of prejudice, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." Id. (citations and internal quotation marks omitted).

The government argues that Daniels has not established excusable neglect because prejudice would result from retrying the case as to Count Six, given the burden on the

government, the Court, and the witnesses. (Doc. # 171 at 2). As for the length and reason for the delay, the government emphasizes that the Dubin case "was pending well before the trial date, even though the Supreme Court decision was not issued until" June 2023. (Id.). Yet, Daniels "failed to raise this legal argument at trial, including in the jury charge conference, and proposed the same jury instruction that defendant now challenges." (Id.).

Although the government's argument is well-taken, the Court finds that Daniels has established excusable neglect. Until Dubin was decided, Daniels had no reason to seek retrial of Count Six and, importantly, he moved for a new trial within fourteen days of Dubin's issuance. Daniels's counsel has acted in good faith by promptly filing the Motion in light of new Supreme Court precedent. The Court does not find that the prejudice caused by a new trial is so great that it forecloses a finding of excusable neglect. The Motion is deemed timely. The Court will review the Motion on the merits.

### B. A New Trial is Not Warranted

Section 1028A, under which Daniels was convicted, makes it a crime to "knowingly transfer[], possess[], or use[], without lawful authority, a means of identification of another person" "during and in relation to" certain

enumerated felonies, including wire fraud. 18 U.S.C. § 1028A(a)(1).

Daniels contends that the jury instruction on the "during and in relation to" element of a Section 1028A violation is no longer good law considering the recent Dubin decision, which was issued months after the jury verdict in this case. (Doc. # 167 at 2). Daniels also argues that his "misuse of identification was not the 'crux' of the criminality, here wire fraud." (Id. at 3). Rather, according to Daniels, the "forgery of J.E.'s signature [on a towing and storage receipt] was merely 'ancillary' to the fraudulent scheme." (Id.).

In Dubin, the Supreme Court clarified the scope of Section 1028A aggravated identity theft. Dubin was an overbilling case, in which the defendant misrepresented only the qualifications of the professional who performed psychological testing on a patient to increase the reimbursement from Medicaid. Dubin, 143 S. Ct. at 1563-64. Ultimately, the Court overturned the aggravated identity theft conviction, which was based on the presence of patients' personal information on the inflated bill. Id. The Court held that the words "use" and "in relation to" in Section 1028A should not be read so broadly that the statute would "apply

6

automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses." Id. at 1564-65.

Instead, the Court explained that a "defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of what makes the conduct criminal." Id. at 1573. "To be clear, being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'" Id. (citation omitted). "Instead, with fraud or deceit crimes like the one in this case, the means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved," rather than "how" a service was performed. Id.

To illustrate this principle, the Court repeated a heuristic used by the Sixth Circuit to determine when the use of personal information is the crux of the criminality, rather than ancillary:

> Take an ambulance service that actually transported patients but inflated the number of miles driven. The crux of this fraud was "how" services were

7

> rendered; the patients' names were part of the billing process, but ancillary to what made the conduct fraudulent. In contrast, take the pharmacist who swipes information from the pharmacy's files and uses it to open a bank account in a patient's name. That "misuse of th[e] means of identification" would be "integral to" what made the conduct fraudulent, because misrepresentation about who was involved was at the crux of the fraud.

Dubin, 143 S. Ct. at 1565 (citations omitted).

Here, Daniels' conduct underlying Count Six is not like the conduct in Dubin, in which the fraud was about "how" services were provided, not "who" was involved. Here, unlike in Dubin, Daniels did not provide a service to a client but misrepresent how the service was performed to inflate the bill. Rather, as Daniels acknowledges in his Motion, Daniels was found guilty of "forging the signature of 'J.E.' on a towing and storage receipt." (Doc. # 167 at 3) (citing (Doc. # 154 at ¶ 18)).

The presentence investigation report, which correctly presents the evidence adduced at trial, explains the use of J.E.'s personal information as follows:

> Another of the vehicles involved in the fraud scheme was a 2015 Ford Focus, which was financed via a loan from Texas DOW Employees Credit Union. In or around August 2017, McGeehan created false and fraudulent paperwork for the 2015 Ford Focus sedan as purported proof of a towing and storage lien. This paperwork included the documentation detailed above and claimed $1,100 in towing and storage fees to a fake towing and storage company.

8

> **The towing and storage receipt included a forged signature for J.E., who was deceased at the time his signature was forged.** The preparation of this paperwork required McGeehan to query AutoDataDirect, Inc. to obtain the names and addresses of the vehicles' registered owners and lienholders. In this particular instance the vehicle was registered in a state outside of Florida, and as a result, this query resulted in interstate wire transmissions. McGeehan provided the paperwork to Daniels, who in turn recruited Wayne Norris (Norris) to provide [it] to the Florida tax collector's office. Daniels paid Norris to do this task. **Upon review of the forms, a representative with the tax collector's office then provided a clear title to the vehicle. The vehicle was later sold and none of the sale proceeds were used to satisfy the outstanding loan.** The loss amount for the vehicle was $3,710.42, which was the outstanding loan amount.

(Doc. # 154 at ¶ 18) (emphasis added). Likewise, the government accurately summarizes the identity theft this way: "as part of the wire fraud scheme, [Daniels] and his coconspirators stole and used the identity of J.E., the lienholder, on the tow slip to make it look like the lienholder had been notified of the tow." (Doc. # 171 at 3-4). "[T]he key reason the fraud scheme worked is that the persons at the tax collector's office believed the lienholders had notice of the tows. The employees thought the tows were legitimate because they saw the signatures on the tow slips." (Id. at 4).

The Court agrees with the government that Daniels' "conduct here falls squarely within the classic variety of identity theft left untouched by Dubin." (Doc. # 171 at 3). Such use of J.E.'s identifying information was itself fraudulent or deceptive because it involved forging J.E.'s signature on a tow slip he had not reviewed to fool the tax collector's office. Indeed, this type of fraudulent use of a person's identifying information to deceive others fits within a classic definition of "identity theft" recited by the Dubin Court: "[t]he unlawful taking and use of another person's identifying information for fraudulent purposes; specif[ically] a crime in which someone steals personal information about and belonging to another, such as a bank-account number or driver's-license number, and uses the information to deceive others." Dubin, 143 S. Ct. at 1568 (quoting Black's Law Dictionary 894 (11th ed. 2019) (Black's) (defining "identity theft")). Thus, such use of J.E.'s identifying information cannot be called "ancillary to what made the conduct fraudulent." Id. at 1565. In short, Daniels has not shown that a new trial on Count Six would produce a different result.

Finally, the Court disagrees with the government's contention that the jury instruction on aggravated identity

theft given at trial "is entirely consistent with the Court's holding in Dubin." (Doc. # 171 at 4). Rather, the instruction has been rendered erroneous in part by Dubin because one sentence in the instruction suggests that mere facilitation of the predicate crime was sufficient to support a conviction. See (Doc. # 141 at 15) ("The means of identification at least must facilitate, or have the potential of facilitating, the crime alleged in the Superseding Indictment.").

Nevertheless, a new trial is not warranted based on the jury instruction. Notably, Daniels proposed the jury instruction (Doc. # 115 at 27-28), and did not object to it at trial. "When a defendant fails to object to a jury instruction, even if there were no legal grounds for challenging the instruction at the time it was given, a district court should deny a motion for a new trial in the absence of plain error." United States v. Sprouse, 517 F. App'x 199, 204 (4th Cir. 2013). Plain error only exists if the defendant "demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the [defendant's] substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the

11

fairness, integrity or public reputation of judicial proceedings.'" United States v. Marcus, 560 U.S. 258, 262 (2010) (citations omitted).

Here, Daniels has failed to establish plain error. Even if the Court assumes the first two requirements are met, Daniels has not shown that the error has affected his substantial rights because he has not established "a reasonable probability that the error affected the outcome of the trial." United States v. Hunte, 771 F. App'x 988, 990 (11th Cir. 2019) ("To establish that an error affected her substantial rights, the appellant is ordinarily required to establish that there is 'a reasonable probability that the error affected the outcome of the trial.'" (citation omitted)); see also United States v. Hastings, 134 F.3d 235, 240 (4th Cir. 1998) (declining to vacate conviction under plain error review where jury instruction not objected to at trial was rendered erroneous by a subsequent Supreme Court decision and finding defendant's substantial rights were not affected).

Regardless, Daniels cannot establish the fourth requirement that the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Indeed, for the reasons discussed previously, the evidence

adduced at trial proved that Daniels' use of J.E.'s forged signature was classic identity theft unaffected by Dubin, such that he would be found guilty of aggravated identity theft under a correct instruction. See Hastings, 134 F.3d at 244 ("[T]he evidence adduced at trial points inexorably to the conclusion that Phillips carried a firearm during and in relation to a drug trafficking crime. Therefore, even if Phillips could establish that the erroneous instruction by the district court affected his substantial rights, we would decline to reverse his conviction."). The trial against Daniels resulted in a fair and reliable determination of guilt on Count Six, precluding a finding of plain error. See United States v. Cedelle, 89 F.3d 181, 186 (4th Cir. 1996) ("Central to this inquiry [of whether an error seriously affected the fairness, integrity or public reputation of judicial proceedings] is a determination of whether, based on the record in its entirety, the proceedings against the accused resulted in a fair and reliable determination of guilt."); see also United States v. Williams, No. CR 17-00101 LEK, 2020 WL 4883937, at *11 (D. Haw. Aug. 19, 2020) ("[T]here is overwhelming evidence supporting Defendant's convictions. This Court therefore concludes that allowing Defendant's convictions to stand, in spite of the Ninth Circuit's

subsequent decision in Miller, would not 'seriously affect[] the fairness, integrity, or public reputation of judicial proceedings.' Because the fourth requirement in the plain error analysis is not met, giving the erroneous instructions in Jury Instruction No. 18 and Jury Instruction No. 20 did not constitute plain error." (citation omitted)).

Because the evidence of identity theft presented at trial still supports Daniels' Section 1028A conviction under the clarification of Dubin and Daniels has not established plain error regarding the jury instruction, "the interest of justice" does not require a new trial of Count Six. The Motion is denied.

Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant Jonathan Daniels' Motion for New Trial on Count Six (Doc. # 167) is **DENIED.**

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 13th day of July, 2023.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE